[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 27, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-10545
Non-Argument Calendar

_____

D. C. Docket No. 03-01036-CV-J-32-MCR

AARON A. SMITH,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(December 27, 2006)**

Before DUBINA, CARNES and HULL, Circuit Judges.

PER CURIAM:

Aaron Smith, a Florida state prisoner serving concurrent sentences on three state drug convictions, appeals the district court's denial of his 28 U.S.C. § 2254 petition for writ of habeas corpus.[1] After review, we affirm.

## I.  BACKGROUND

### A.  State Court Proceedings

On June 16, 1999, Smith was arrested and charged with sale of cocaine, possession of cocaine, and possession of marijuana. Before trial, Smith filed a demand for discovery under Fla. R. Crim. P. 3.220, seeking "[a]ny evidence or information within the State's possession, control or knowledge which is exculpatory or favorable to the Defendant with respect to the offenses charged." At the jury trial in November 1999, the State presented testimony from Officer Aric Sinclair and four narcotics detectives involved in the undercover drug operation that led to Smith's arrest. Smith's codefendant also testified against him. Smith was convicted and sentenced, as an habitual felony offender, to twenty years' imprisonment for the sale or delivery of cocaine and concurrent sentences of five years for possession of cocaine and one year for possession of marijuana. In February 2001, Smith's convictions were affirmed on appeal. See Smith v. State,

---

[1] Smith filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996); therefore, the provisions of that Act govern this appeal.

778 So. 2d 286 (Fla. Dist. Ct. App. 2001).

On February 1, 2002, Smith filed a motion for post-conviction relief, pursuant to Fla. R. Crim. P. 3.850, alleging that the State violated Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), by suppressing evidence that could have impeached Officer Sinclair's testimony. Smith alleged that the State had suppressed information regarding a joint federal-state investigation that targeted corrupt Florida police officers, including Officer Sinclair, for drug violations, illegal searches, and other criminal activity. Smith learned of this investigation from a series of newspaper articles published in 2000, which he filed with the state court. The articles indicated that the federal-state investigation had begun in December 1998, prior to Smith's arrest and trial in 1999. Officer Sinclair was indicted on December 12, 2000, and convicted in federal court on September 21, 2001.

The state court denied Smith's 3.850 motion, determining that Smith failed to show that the state prosecutor in his case was aware that Sinclair was under investigation. See State v. Smith, No. 99-7486-CF-B at 2 (Fla. Cir. Ct. Sept. 20, 2002). The state court indicated that it was "not persuaded by Defendant's speculative argument that the State had information concerning Officer Sinclair's investigation at the time of Defendant's trial." Id.

3

Alternatively, the state 3.850 court concluded that there was substantial evidence beyond Sinclair's testimony to support the verdict, and therefore, that there was no reason to believe that any evidence concerning the investigation of Sinclair "would have changed the outcome of the trial." Id. at 2-4. The state court reviewed how the testimony of several other police officers besides Sinclair, the testimony of Smith's codefendant, and Smith's own admissions proved Smith's guilt. The state appellate court affirmed the denial of Smith's 3.850 motion. Smith v. State, 855 So. 2d 62 (Fla. Dist. Ct. App. 2003).

**B.     § 2254 Petition**

On December 8, 2003, Smith filed his § 2254 petition in federal district court, alleging that his state drug convictions were obtained in violation of Brady. The district court denied Smith's petition, concluding that the state court's ruling was neither contrary to nor an unreasonable application of clearly established federal law. See Smith v. Crosby, No. 3:03-cv-1036-J-32MCR at 15 (M.D. Fla. Dec. 14, 2005). The district court also concluded that the state court's 3.850 ruling was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Id. Specifically, the district court also determined that Smith had not shown that the state prosecutor, at the time of Smith's November 1999 trial, would have been aware of the investigation

4

of Sinclair.  Id. at 17.

Alternatively, the district court concluded that, even assuming arguendo that the prosecution suppressed favorable evidence, this lack of Brady disclosure was not material because Sinclair's testimony was brief, there was overwhelming evidence to convict Smith without Sinclair's testimony, and Smith had received a fair trial and a verdict worthy of confidence.  Id. at 17-22.  Smith appeals the denial of his § 2254 petition.

## II.  DISCUSSION

### A.    Deferential Standard of Review

"[W]e review de novo the district court's resolution of questions of law and of mixed questions of law and fact."  Conklin v. Schofield, 366 F.3d 1191, 1199 (11th Cir. 2004), cert. denied, 544 U.S. 952 (2005).  However, under AEDPA, a federal court may not grant habeas relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  The state court's factual determinations are "presumed to be correct" and the petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence."  28

U.S.C. § 2254(e)(1).

## B.   **Brady** Issue

Under Brady, prosecutors have an affirmative duty to reveal any "evidence [that] is material either to guilt or to punishment." 373 U.S. at 87, 83 S. Ct. at 1197-98. For purposes of a Brady violation, this disclosure duty covers impeachment evidence as well as exculpatory evidence. See Kyles v. Whitley, 514 U.S. 419, 433, 115 S. Ct. 1555, 1565 (1995). To establish a Brady violation, Smith must show "(1) that the [State] possessed evidence favorable to the defense, (2) that the defendant did not possess the evidence and could not obtain it with any reasonable diligence, (3) that the prosecution suppressed the evidence, and (4) that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense." Moon v. Head, 285 F.3d 1301, 1308 (11th Cir. 2002) (quotation marks and citation omitted).

We first conclude that the state court's determination–that Smith failed to show that the state prosecutor had knowledge about the investigation of Officer Sinclair–was neither an unreasonable determination of the facts in light of the evidence presented in state court nor an unreasonable application of clearly established law. In state court, Smith relied on four newspaper articles published in 2000 and Sinclair's December 2000 indictment, all of which occurred after

6

Smith's trial in November 1999.  Furthermore, the articles and indictment gave no indication of when Sinclair became a target of the investigation, or of any awareness by the state prosecutor that Sinclair was a target.  In fact, one of Smith's newspaper articles noted that the State Attorney's office had declined to have one of its prosecutors on the task force:

> Oddly, during the whole process, the State Attorney's Office . . . has not gotten involved.  The U.S. Attorney's Office told State Attorney Harry Shorstein he could have a prosecutor on the task force, but that person wouldn't be allowed to share information with anyone, including Shorstein.  Shorstein declined the offer.

Although the State Attorney's office may have been aware of the general existence of an investigation, that does not demonstrate that they knew any of the details, including that Sinclair was under investigation.

Smith also argues that the general law enforcement knowledge of the investigation should be legally, or per se, imputed to the state prosecutor in Smith's case, and that the state 3.850 court's failure to consider imputed knowledge violated Kyles, which states that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."  Kyles, 514 U.S. at 437, 115 S. Ct. at 1567 (1995).  This Court has noted that "Kyles does not, however, further define what exactly is meant by 'acting on the government's behalf.'"  Moon, 285 F.3d at 1309 (2002).

7

In Moon, we also pointed out that a claimant must still show that the favorable evidence was possessed by a district's prosecution team, which includes both investigative and prosecutorial personnel, that the prosecution team is defined as "the prosecutor or anyone over whom he has authority," and that there is no per se rule of imputation. Id. (citing United States v. Meros, 866 F.2d 1304, 1309 (11th Cir. 1989) and United States v. Antone, 603 F.2d 566, 570 (5th Cir. 1979)). Here, Smith has not shown that the state prosecutor in this case had authority over anyone with knowledge that Sinclair was a target of the investigation. Accordingly, Smith has not demonstrated that the state court's decision on the Brady issue was contrary to, or an unreasonable application of, clearly established federal law, or that the decision involved an unreasonable determination of the facts in light of the evidence presented.

## C.    Materiality Standard

The state court alternatively concluded that even if the information was in the possession of the state prosecutor, Smith's alleged impeachment evidence still would not satisfy Brady's materiality standard. To satisfy Brady's materiality standard, Smith must demonstrate a reasonable probability that, had the favorable evidence been disclosed, the result of the proceeding would have been different. Moon, 285 F.3d at 1308. A reasonable probability of a different result is shown

8

when the government's evidentiary suppression "'undermines confidence in the outcome of the trial.'" Kyles, 514 U.S. at 434, 115 S. Ct. at 1566 (quoting United States v. Bagley, 473 U.S. 667, 678, 105 S. Ct. 3375, 3381 (1985)). Smith claims that the state court applied the wrong legal standard in evaluating whether the impeachment evidence was material. We need not resolve that issue because the challenged impeachment evidence so clearly lacked materiality given how minor Sinclair's role was at trial and given the other overwhelming evidence against Smith.

For example, at trial, undercover narcotics detectives Donald Nixon and Robert Cook testified that they made contact with Roland Ball, Smith's codefendant. Nixon told Ball they wanted to buy forty dollars worth of crack cocaine, and Ball said he could take them to get it. Ball got in the detectives' car and directed them to a house with a car parked in the driveway. Nixon gave Ball forty dollars in marked money. Ball walked to the car parked in the driveway and got in. Less than a minute later, Ball returned to the detectives' car with two pieces of crack cocaine. At trial, Ball identified Smith as the man who provided him with drugs and testified that Smith provided him with cocaine in exchange for the money given to him by the undercover detectives.

Two blocks away, Officer Sinclair and Detectives Bishop and Van Dyke

9

were given the signal to arrest the individuals involved in the drug transaction. Sinclair testified that he approached the vehicle parked in the driveway and pulled Smith from the vehicle. In searching Smith, he recovered a twenty-dollar bill. Detectives Cook and Nixon both testified that the serial numbers on the money that was recovered from Smith by Sinclair matched the serial numbers on the money that they had given Ball. The jury also heard testimony from Detective Bishop, who testified that he recovered drugs from the car close to where Smith had been sitting, and Detective Van Dyke, who testified that Smith first denied but later admitted that the drugs belonged to him. In sum, given this trial testimony, any failure to disclose the impeachment evidence does not undermine confidence in the outcome of the trial and is thus not material under Brady.[2]

For all of these reasons, the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented. Thus, we affirm the district court's denial of Smith's § 2254 petition.

**AFFIRMED.**

---

[2]We also reject Smith's claim that the district court erred in refusing to grant him an evidentiary hearing.